**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Rohr,<br><br>        Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural<br>Improvement and Power District,<br><br>        Defendant. | No. CV-04-3015-PHX-FJM<br><br>**ORDER** |

Plaintiff was employed by defendant Salt River Project Agricultural Improvement and Power District ("SRP") for twenty-three years, until March 2004, when he was terminated. Plaintiff then filed this action against SRP under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. The court now has before it SRP's motion for summary judgment (doc. 23), plaintiff's response (doc. 26), and SRP's reply (doc. 28).

**I**

Plaintiff was employed as a welding metallurgy specialist and was part of the Plant Technical Support Group, which is made up of various specialists who provide services to SRP's electric generating plants throughout Arizona, including during periodic shutdowns or outages at the facilities. During an outage, the work can be intense and involve twelve-

1  hour days, sometimes seven days a week. Although plaintiff had primarily been assigned
2  office duties for several years, in August 2003, plaintiff's supervisor assigned plaintiff to a
3  five to six week outage project at the Navajo generating station in Page, Arizona. In
4  response, plaintiff submitted a letter from his personal physician, Stephen Dippe, M.D.,
5  recommending restrictions on plaintiff's work, including no overnight or out-of-town
6  assignments, no work days in excess of nine hours, and no exposure to extreme heat. At
7  SRP's request, plaintiff was then evaluated by SRP's medical director, Dr. Timothy Woehl,
8  who confirmed Dr. Dippe's recommended restrictions and further recommended that all of
9  the restrictions should be permanent. By March 2004, SRP determined that these restrictions
10 prevented plaintiff from performing the essential functions of his job, and informed plaintiff
11 that he would have to pursue another position within SRP, apply for disability benefits, or
12 take an early retirement. On June 14, 2004, plaintiff's employment was terminated.

## II

14 The ADA prohibits employment discrimination against a "qualified individual" with
15 a disability. 42 U.S.C. § 12112(a). An individual has a disability under the ADA if he has
16 "a physical or mental impairment that substantially limits one or more of the major life
17 activities of such individual." Id. at § 12102(2)(A). The Supreme Court has concluded that
18 "these terms need to be interpreted strictly to create a demanding standard for qualifying as
19 disabled." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691
20 (2002). A three-part test is applied to determine whether a plaintiff is entitled to an
21 accommodation under the ADA: (1) whether the plaintiff's condition constitutes a mental
22 or physical impairment; (2) whether the impairment impacts a major life activity; and (3)
23 whether the impairment substantially limits the major life activity. Wong v. Regents of the
24 Univ. of Cal., 410 F.3d 1052, 1063 (9th Cir. 2005).

## A

SRP contends that plaintiff's diabetes does not substantially limit a major life activity, and therefore he is not entitled to ADA protection. There is no real dispute as to the first two prongs of the test. In Fraser v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003), the court concluded that diabetes is a "physical impairment" under the ADA, and that "the physical activity of eating in general" is a major life activity. Id. at 1040. The real controversy, therefore, lies with the third prong of the test: whether plaintiff's impairment substantially limits his life activity of eating.

Diabetes has been found in certain situations to be an impairment that substantially limits an individual's major life activity. See Lawson v. CSX Transp., Inc., 245 F.3d 916, 924 (7th Cir. 2001) (where claimant suffered from debilitating insulin reactions with potential dire consequences despite strict adherence to treatment regimen); Fraser, 342 F.3d at 1042 (claimant's "perpetual, difficult, and multifaceted treatment regimen" of her "brittle" diabetes substantially limits the major life activity of eating). However, while some persons have been found to be substantially limited by diabetes, the disease does not invariably cause a substantial limitation of a major life activity. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 483, 119 S. Ct. 2139, 2147 (1999) (rejecting the proposition that a diabetic could be considered "disabled" under the ADA simply because he has diabetes). Instead, the "determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 119 S. Ct. 2162, 2169 (1999) (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)). In order to prove a substantial limitation, claimants must demonstrate "the extent of the limitation caused by their impairment in terms of their own experience." Toyota, 534 U.S. at 198, 122 S. Ct. at 691 (quotation omitted).

Here, plaintiff describes the general characteristics and effects of diabetes, Plaintiff's Response at 8, but he does not discuss its individualized nature and severity or how it affects

1  his life activities. He relies upon the work-related restrictions recommended by Drs. Dippe
2  and Woehl; however, these work-related restrictions by themselves are insufficiently
3  probative of whether plaintiff's impairment substantially affects his major life activity of
4  eating. Moreover, we must consider corrective and mitigating measures, such as medication,
5  when determining whether an individual is substantially limited, see Sutton, 527 U.S. at 482,
6  119 S. Ct. at 2146, and plaintiff admits that if he stays on his medicine and watches what and
7  when he eats the only limitations on his activities are the work-related restrictions
8  recommended by his physicians.

9  Therefore, based on plaintiff's failure to make any showing that his diabetes
10 substantially affects his life activity of eating, we conclude that he has failed to raise a
11 material issue of fact that this life activity is substantially limited.

**B**

13 SRP alternatively contends that plaintiff is not entitled to accommodations under the
14 ADA because he is not "qualified" for the position of welding metallurgy specialist since he
15 is unable to pass the respirator certification test as required by SRP's respiratory protection
16 program. A "qualified individual" is "an individual with a disability who, with or without
17 reasonable accommodation, can perform the essential functions of the employment position
18 that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, to show he is
19 "qualified," plaintiff must demonstrate that he has the "requisite skill, experience, education
20 and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m).

21 SRP asserts that because plaintiff is unable to pass the respirator certification
22 requirement, he is not "qualified" for the position of metallurgy specialist, and his ADA
23 claim fails as a matter of law. SRP contends that pursuant to the Occupational Safety and
24 Health Administration ("OSHA"), it is "responsible for the establishment and maintenance
25 of a respiratory protection program." 29 C.F.R. § 1910.134(a)(2). The regulations require
26 that an employer's program include "medical evaluations of employees required to use
27 respirators," and "procedures for proper use of respirators in routine and reasonably
28 foreseeable emergency situations." Id. at § 1910.134(c)(1)(ii) and (iv). In compliance with

OSHA requirements, SRP has established a respiratory protection program, requiring all employees in the Plant Technical Support Group, including plaintiff, to obtain annual respirator certification. See PSSOF ¶ 2. It is undisputed that plaintiff has failed to obtain the annual certification since 2003. We agree that the respirator certification is a "job-related requirement" that defines as a threshold matter whether an individual is "qualified" for a position. Because plaintiff is unable to pass the requisite certification, we conclude that plaintiff is not qualified for the position, and accordingly, the ADA protections do not apply.

### III

Plaintiff has withdrawn his age discrimination claim, and his claim for punitive damages. Response at 12. Accordingly, SRP's motion for summary judgment on plaintiff's age discrimination claim, and punitive damages claim is granted.

### IV

Based on the foregoing, **IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 23).

DATED this 14th day of July, 2006.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge